GENERAL ELECTRIC CO. v. SMITH.

(Circuit Court of Appeals, First Circuit. November 12, 1909.)

No. 837.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ELECTRIC SAFETY FUSE.

The Thalacker patent, No. 502,541, for an electric safety fuse, the essential feature of which is the use of an auxiliary fuse, so placed that it may be seen, and which will be destroyed when the main fuse is blown, as an indicator of the condition of the main fuse, was not anticipated, and discloses invention, and is entitled to a fairly broad construction; also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit in equity by the General Electric Company against Fred B. Smith for infringement of patent. Decree (170 Fed. 593) for defendant, and complainant appeals. Reversed.

William K. Richardson and Alexander D. Salinger, for appellant.

John P. Bartlett (Henry B. Brownell, on the brief), for appellee.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

LOWELL, Circuit Judge. This was a bill in equity to restrain the infringement of letters patent No. 502,541, issued August 1, 1903, to. Thalacker. The following claims are in issue:

"1. In an electric safety fuse, the combination of a main safety fuse, an auxiliary safety fuse, and a box or casing completely enveloping the main fuse, but so constructed as to permit the condition of the auxiliary fuse to be seen.

"2. In an electric safety fuse, the combination of a main fuse, an auxiliary fuse, and a casing completely enveloping the main fuse, but only partially enveloping the auxiliary fuse."

---

"4. In an electric safety fuse, the combination of a main fuse, an auxiliary fuse, overlying and underlying portions of insulating material, and an inclosing casing, said casing provided with an opening through its top portion whereby the conditions of the auxiliary fuse may be observed."

The defendant denied the validity of the patent and its infringement. The learned judge of the Circuit Court found that no infringement had been committed, and he dismissed the bill. The complainant thereupon brought the case to this court by appeal.

Unprotected safety fuses, when "blown" or fused by the current, often "arc," and spatter the fused metal over neighboring objects, sometimes igniting them. If the safety fuse be suitably inclosed, the dangers above stated are largely obviated; but the condition of the fuse cannot be known without breaking open the box or casing, and a wire supposed to be dead may prove to be alive, to the damage of an employé who handles it. To obviate the dangers last mentioned, Thalacker's patent was issued. It covers an auxiliary fuse in shunt with the main fuse. The former is so much exposed to observation that its condition can at any time be ascertained, and the condition of the main safety fuse be inferred therefrom.

"In order to make a safety fuse which shall have none of the faults mentioned, I combine with a strip of fusible metal, completely inclosed in a non-conducting box or case, an auxiliary fusible strip so located and connected as to be seen at all times, and which will be destroyed when the main fuse, which is out of sight, is 'blown.' "

The destruction of the auxiliary fuse at the time of the destruction of the main fuse is secured by the attempted passage through the former of an excessive current, no part of which can be carried through the latter after it is blown. This device to manifest the condition of the main safety fuse we consider to be the primary object of the Thalacker patent, as disclosed in the claims in suit and in the specifications. For two purposes, both to prove the patent invalid, and, if it be valid, to limit its scope narrowly, the defendant put in evidence a considerable number of patents, American and British. We need refer to only three.

In the Edison patent, No. 264,659, notice of the blowing of the main fuse is given by a bell carried on an auxiliary conductor in shunt. The auxiliary conductor is not blown by the blowing of the main fuse; but the passage of the excessive current through the auxiliary conductor does no more than ring the bell. The arrangement of the Edison patent is different from that of the Thalacker patent, and is ill-adapted to many places for which the patent in suit was intended. In the Edison device, the auxiliary conductor is not a fuse. Its condition is not seen, as in Thalacker's first claim, but heard. It is not partly enveloped in the casing, as is stated explicitly in Thalacker's claims 2 and 4, and, by implication, in claim one read in the light of the specifications. Its mode of operation is different.

In the patent to Van Depoele, No. 417,122, the combustion of the safety fuse ignites a small cord or other fragile support sustaining a semaphore. The destruction of the support releases the semaphore, which drops out of the inclosing box. The Van Depoele device contains no auxiliary fuse in the proper sense of the word, and its prac-

tical operation is open to numerous objections which do not lie against the patent in suit.

In the British patent to Mordey, No. 19,076 of 1890, the patentee sought principally to set out the advantages of packing a safety fuse in a porous substance which should take up some of the heat engendered by the fusing as well as the minute particles of molten metal. The patent in suit suggests, as old in the art, a nonconducting box or a packing of thin strips of nonconducting material. Mordey's "finely divided or pulverized nonconducting material" may be preferable as a packing. The comparison is not in question here. Again, Mordey states that:

"A small space is or may be left uncovered by this material at some portion of the tube or vessel, to enable the position and condition of the fuse conductor to be observed."

He here refers to an observation, not of the auxiliary, but of the main, fuse, the need of which observation Thalacker sought to avoid. Still again, Mordey says:

"For large currents I prefer to use a small fuse constructed as above described, or otherwise according to my invention, and to shunt it by an ordinary fuse, or by an electro magnetic or other cut-out. This ordinary fuse or cut-out is arranged to carry practically the whole current. In the event of an excessive current, the ordinary fuse melts, or the cut-out acts, but does so with a scarcely perceptible spark. The final rupture of the circuit then occurs in the small special fuse."

Here Mordey's "ordinary fuse," which carries practically the whole current, is fully exposed, and the small packed and covered fuse does not serve as an indicator, but only to prevent the ordinary fuse from "arcking." This effect it produces by itself taking the final break in the current, and so relieving the ordinary fuse. As is said by Prof. Cross, the complainant's expert:

"If the current becomes excessive, the ordinary fuse melts, or the cut-out acts, but with a scarcely perceptible spark, and the final rupture of the circuit then occurs in the small special fuse."

This operation has nothing to do with the patent in suit. Where the Mordey patent uncovers "a small portion of the fuse conductor," there is no auxiliary fuse; and where Mordey shows an auxiliary fuse, the main fuse is quite uncovered, and no indicator is needed or employed.

Of the elements in Thalacker's first claim the main safety fuse and the box or packing which envelop it are old in the art. The gist of Thalacker's patent consists in the combination with these old elements of an auxiliary fuse, whose condition is at all times conveniently observed, so that by reasonable inference the condition of the main fuse may be known. This combination appears to us novel and unanticipated by any of the patents cited. The invention goes beyond the mere details shown, and the patent should receive a construction correspondingly broad. As was said by the learned judge of the Circuit Court:

"While these patents show that Thalacker was not the first to provide an inclosed fuse with an exterior conductor, they contain no suggestion of the use of the auxiliary fuse for indication."

If this be true, we find little difficulty with the issue of infringement. The defendant's device differs from that of the patent in suit only in

the formation of its safety fuse. Instead of a small fuse, purely metallic, in shunt with the main fuse, the defendant has employed a fine wire connecting the main safety fuse with a paste, which conducts the current into the metal cap of the covering case and so returns it to the main line. When the main fuse is blown, the current passing through the highly resisting wire portion of the auxiliary fuse ignites a part of the paste and renders it a nonconductor. The condition of the auxiliary fuse is known, not by looking at the broken wire through a small hole in the covering, as in the patent in suit, but by the discoloration of the paste shown through a similar hole. We regard these differences as immaterial.

Both the complainant and the respondent have argued the questions of invention and infringement without reference to any distinction among the three claims in suit. Therefore we have not analyzed the differing language of these claims, and have confined ourselves to showing that the first claim duly sets out Thalacker's patentable invention and that the defendant has infringed Thalacker's patent.

The decree of the Circuit Court is reversed, the case is remanded to that court, with directions to enter a decree in favor of the complainant on claims 1, 2, and 4, and to proceed otherwise in accordance with law, and the appellant recovers its costs of appeal.